654 So.2d 873 (1995)
D. Stephen ROSENBLOOM
v.
Renee BAUCHAT, Wife of D. Stephen Rosenbloom.
No. 94-CA-2346.
Court of Appeal of Louisiana, Fourth Circuit.
April 26, 1995.
Leslie A. Bonin, New Orleans, for plaintiff/appellant.
Mitchell J. Hoffman, Kermit L. Roux, III, Lowe, Stein, Hoffman, Allweiss & Hauver, New Orleans, for defendant/appellee.
*874 Before BYRNES, PLOTKIN and JONES, JJ.
PLOTKIN, Judge.
In this case, this court is required to decide two important procedural issues arising in the context of a child support dispute: (1) Does La.C.C.P. art. 3943 allow suspensive appeals of judgments awarding child support retroactive to the date of judicial demand? and (2) May a parent sue to enforce a child support obligation owed by the other parent after the child reaches majority? The district court held that La.C.C.P. art. 3943 prohibits suspensive appeals of child support judgments and that a parent may not sue to enforce a child support obligation after the child has reached majority. For the reasons stated below, we affirm.

FACTS
D. Stephen Rosenbloom and Rene Bauchat Kutcher were divorced in 1982. A consent judgment entered into at the time provided that Mr. Rosenbloom would pay child support of $500 per month for their two children. Mr. Rosenbloom also agreed to pay "school tuition for the children during their minority or until the completion of their higher education." In September 1993, after one child, J.C., had already reached majority, Mrs. Kutcher filed a Motion to Increase Child Support.
The district court heard the motion on June 20, 1994, and rendered judgment on June 28, 1994, increasing the support for the remaining minor child from $500 to $5,293.17 per month. Pursuant to LSA-RS 9:315.21, the increase was made retroactive to the date of judicial demand.[1] Although Mr. Rosenbloom immediately began paying the increased support, he failed to pay the retroactive component of the new support obligation, which amounted to $38,491.04. As a result, Mrs. Kutcher filed a Motion for Contempt and to Compel and for Reasonable Attorney's Fees. In response, Mr. Rosenbloom filed several exceptions, all of which were rejected by the district court.
Separately, on June 21, 1994, Mr. Rosenbloom informed Lehigh University, where his major son J.C. attended classes, that he would no longer pay J.C.'s tuition and fees. This action constituted an apparent violation of the 1982 consent judgment. Mrs. Kutcher filed a Motion for Contempt and to Compel Mr. Rosenbloom to pay J.C.'s college expenses. The district court granted Mr. Rosenbloom's Exception of No Right of Action and No Cause of Action, finding that, because J.C. was a major, only J.C. had the right to bring the action.

LAW AND DISCUSSION

I. Does C.C.P. art. 3943 allow suspensive appeals of judgments awarding child support retroactive to the date of judicial demand?
First, we must determine whether La.C.C.P. art. 3943 permits suspensive appeals of child support judgments. That article provides as follows:
An appeal from a judgment awarding custody, visitation, or support of a person can only be taken within the delay provided in Article 3942. Such an appeal shall not suspend execution of the judgment insofar as the judgment relates to custody, visitation, or support.
Mr. Rosenbloom contends that La.C.C.P. art. 3943 provides solely for devolutive appeals of judgments awarding child support and not to retroactive child support orders. He advances an argument based on the statutory construction of La.C.C.P. art. 3943 and advances an argument based on the statutory construction of La.C.C.P. art. 3943 and LSA-RS 9:315.21.[2] Mr. Rosenbloom asserts that LSA-RS 9:315.21, the statute which provides for the retroactivity of child support awards, applies to judgments "awarding, modifying or revoking" interim awards of *875 child support, or judgments "modifying or revoking" final child support orders. By contrast, La.C.C.P. art. 3943 is limited to judgments "awarding" child support. From this line of reasoning, Mr. Rosenbloom draws two conclusions: First, the Louisiana legislature clearly intended that application of Art. 3943 be more restrictive than LSA-RS 9:315.21. Second, since the instant case involves only the retroactive modification, rather than award, of child support, prohibition on suspensive appeals imposed by La.C.C.P. art. 3943 is inapplicable.
Mr. Rosenbloom's textual analysis focuses exclusively on the first sentence of La.C.C.P. art. 3943, which apparently limits its scope to judgments "awarding" custody. His analysis, however, overlooks the second sentence of La.C.C.P. art. 3943, which provides that "an appeal shall not suspend execution of the judgment so far as the judgment relates to... support." Thus, an apparent ambiguity exists between the restrictive first sentence ("awarding") and the broader second sentence ("relates to").
Fortunately, the Louisiana Supreme Court resolved this ambiguity in Malone v. Malone, 282 So.2d 119 (La.1973). In Malone, the ex-husband argued that La.C.C.P. art. 3943 was inapplicable to the appeal of a trial court's refusal to terminate alimony. Like Mr. Rosenbloom, the ex-husband contended that La. C.C.P. art. 3943 applies only to a "judgment awarding" alimony and not to a judgment refusing to terminate alimony. In rejecting the ex-husband's contentions, the court reasoned as follows:
The main purpose of Art. 3943, which has no counterpart in the Code of Practice, is to codify the legislatively overruling jurisprudence which held that suspensive appeals could be taken from judgments awarding alimony. However, the wording of the article is unfortunate: "judgment awarding," which appears in the first sentence of the article, appears to demand a restricted application of Article 3493, but "judgment relates to," which appears in the second sentence of the article, seems to indicate a broader application of the article.
* * * * * *
Confusion has arisen when the judgment being appealed was rendered pursuant to a rule or a petition for the modification or termination of alimony or custody. Usually, the appellate courts have either construed the judgments to be analogous to judgments awarding alimony or custody or have merely applied C.C.P. 3493 to the appeal without articulating their rationale. However, some courts have found that judgments which either terminate or deny alimony or custody are not governed by C.C.P. 3493.
Such confusion could not have been intended by our legislature. The uniform treatment of judgments relating to alimony or custody seems to have been intended. Such treatment would not subvert the purpose of C.C.P. 3493, but would eliminate the unnecessary confusion caused by that article. Strong reason supports the policy of expediting appeals in alimony and custody matters.
Therefore, we hold that appeals from judgments awarding, denying, modifying or terminating alimony or custody are governed by the provisions of C.C.P. 3943.
Id. at 121 (citations omitted).
Since Malone, the only legislative change to La.C.C.P. art. 3943 has been the substitution of "visitation or support" for "or alimony" to encompass child support obligations.[3] Thus, the Supreme Court's reasoning in Malone remains dispositive and governs our holding.
We are not unsympathetic to Mr. Rosenbloom's argument. The retroactive amount he has been ordered to pay, over $38,000, is a daunting sum. Furthermore, his contention that since he is meeting his new monthly child support obligation, the public policy of "preventing the denial of necessary support to a spouse pending appeal," Hamiter v. *876 Hamiter, 419 So.2d 517 (La.App.2d Cir.), writ denied, 423 So.2d 1140 (La.1982), should not be applicable, is not completely without merit. Nevertheless, we are bound by Malone. Even if we concede the soundness of Mr. Rosenbloom's argument, it is more properly the province of the Louisiana Supreme Court to reconsider the public policy underpinnings of Malone, or of the Louisiana legislature to amend La.C.C.P. art. 3943. Therefore, we affirm the district court's decision denying Mr. Rosenbloom the right to a suspensive appeal.

II. May a parent sue to enforce the other parent's child support obligation after the child reaches majority?
The second issue is whether one spouse may sue to enforce a child support obligation owed by the other spouse after the child reaches majority. Mrs. Kutcher asserts that she has a right of action and cause of action to compel Mr. Rosenbloom to pay college tuition on behalf of J.C., their major son, pursuant to the divorce consent agreement. The district court granted Mr. Rosenbloom's exceptions of no cause of action and no right of action.
It is well-established that once a child reaches the age of majority, any right to sue for support from parents must be brought in the child's own name.[4] A parent is not a proper party to such suit. Miller v. Miller, 321 So.2d 318, 320 (La.1975). In Miller, the Louisiana Supreme Court held that "when a minor becomes fully emancipated by age or by marriage, his mother may no longer sue for or receive alimony from the father for the support of this child." Id. at 321. Furthermore, "[o]nce a child reaches the age of majority, the father does not owe this child any support as a minor. If any support is owed, it is owed directly to the child as a major. No one but the child may enforce this right once he becomes of age."[5]Id.
Despite this clear precedent, Mrs. Kutcher alleges that the original child support judgment created a stipulation pour autrui in favor of J.C., which she has a right to enforce. We resist Mrs. Kutcher's invitation to apply the conventional obligation principle of stipulation pour autrui in the child support context. The parents' obligation to support their children is an obligation imposed by law. See La.C.C. art. 227. By contrast, a stipulation pour autrui is a contract entered into between two parties that stipulates a benefit for a third person. The contract becomes effective once the third person manifests an intention to avail himself of the benefit. See La.C.C. art. 1978. Notably, before the third person manifests his intent to avail himself of the benefit, the stipulation may be revoked. Child support is a legal obligation and the requirement which may not be revoked, not a conventional obligation entered into between ex-spouses. We know of no case which invoked the stipulation pour autrui principles in the child support context, and we decline to be the first. Thus, we affirm the district court's judgment *877 granting Mr. Rosenbloom's exception of no cause of action and no right of action.
CONCLUSION
For the reasons set forth above, the judgment of the district court is affirmed.
AFFIRMED.
NOTES
[1] This judgment is currently on appeal. 94-CA-1762.
[2] LSA-RS 9:315.21 provides, in pertinent part, as follows:

A. Except for good cause shown, a judgment awarding, modifying, or revoking an interim child support allowance shall be retroactive to the date of judicial demand.
* * * * * *
C. Except for good cause shown, a judgment modifying or revoking a final child support judgment shall be retroactive to the date of judicial demand.
[3] Art. 3943 was amended by Acts 1993, No. 261, § 3. It formerly read: An appeal from a judgment awarding custody of a person or alimony can be taken only within the delay provided in Article 3492. "Such an appeal shall not suspend the execution of the judgment insofar as the judgment relates to custody or alimony."
[4] C.C. Art. 141 comment (g) reminds that a parent's obligation of support is owed to his child, but the child is usually an unemancipated minor in divorce actions and therefore does not have the procedural capacity to sue. C.C.P. Art. 683. Thus, one parent may raise the child support issue during the child's minority.

See also La.C.C.P. art. 682, which provides as follows:
A competent major and a competent emancipated minor have the procedural capacity to sue.
[5] Hogan v. Hogan, 465 So.2d 73 (La.App. 5th Cir.), writ denied 468 So.2d 1207 (La.1985), curiously ignored by both parties, is nevertheless distinguishable. In Hogan, a negotiated child support agreement incorporated into a consent judgment provided that the Mr. Hogan would pay child support to Mrs. Hogan, including all medical and educational expenses, for 12 years, regardless of the fact that during that period all of the children would reach majority. Thus, by the express terms of the agreement, Mr. Hogan granted Mrs. Hogan the right to enforce the agreement. The court held that Mrs. Hogan had a right to bring an action on behalf of the major child to collect educational expenses due the major child. By contrast, in the immediate case the agreement provided for Mr. Rosenbloom to "pay school tuition for the children...." It did not provide for any payments directly to Mrs. Kutcher, nor did it grant Mrs. Kutcher the right to enforce the agreement. In the absence of an express agreement, the major child has an exclusive right to bring an action for support. Hogan, at 78.